1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| GERALD DE LEON CATANGHAL, | Case No.   1:22-cv-00961-EPG |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED |
| v. | |
| GREYHOUND LINES, INC., | (ECF NO. 1) |
| Defendant. | OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS |
| | ORDER DIRECING CLERK TO ASSIGN DISTRICT JUDGE |

Plaintiff Gerald De Leon Catanghal, proceeding *pro se* and *in forma pauperis*, filed this action on August 2, 2022, under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112 *et seq.*, and alleges that Defendant Greyhound Lines, Inc. has engaged in discriminatory employment practices. Plaintiff further alleges that Defendant has engaged in unfair labor practices pursuant to 5 U.S.C. § 7116.

The Court previously screened the complaint and found that Plaintiff failed to state any cognizable claims. (ECF No. 4). The Court gave Plaintiff leave to file an amended complaint to cure the deficiencies identified in the screening order. (*Id.* at 11). Alternatively, the Court gave Plaintiff the option of standing on his complaint, subject to the Court issuing findings and recommendations to a district judge consistent with the screening order. (*Id.*).

1

On December 8, 2022, Plaintiff filed a notice, stating that he wished to stand on his complaint. (ECF No. 5). Accordingly, for the reasons set forth below, the Court recommends that this action be dismissed.

Plaintiff has fourteen days from the date of service of these findings and recommendations to file any objections.

## I.   SCREENING REQUIREMENT

As Plaintiff is proceeding *in forma pauperis* (ECF No. 3), the Court screens the complaint under 28 U.S.C. § 1915. Under this statute, a court may dismiss a case that fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II.   PLAINTIFF'S COMPLAINT

Plaintiff alleges as follows in his complaint: on or about November 19, 2021, Plaintiff sought to resume working for Defendant after being deemed physically fit by his physician and receiving a three-month DOT[1] license from the Department of Motor Vehicles. (ECF No. 1, p. 6). Plaintiff submitted paperwork to that effect to supervisor Nancy Pinedo. (*Id.*). Ms. Pinedo

---

[1] The court assumes that "DOT" refers to the Department of Transportation.

forwarded the documents to manager Kathy Hartman. Three weeks later, Plaintiff was informed by Ms. Pinedo that he had to repeat his physical examination because he went to the wrong medical facility. (*Id.*). Plaintiff was unable to secure an appointment with the approved medical facility until January 5, 2022, at which time Plaintiff underwent another physical examination and passed all medical tests. (*Id.*). Plaintiff received a medical certification and a one-year DOT license from the DMV. (*Id.*).

Plaintiff submitted the paperwork regarding his medical clearance and DOT license to Ms. Pinedo. (*Id.*). Several weeks later, Ms. Hartman instructed Ms. Pinedo to inform Plaintiff that certain medical documents were missing. (*Id.*). Ms. Hartman requested that Plaintiff undergo the physical examination for a third time. (*Id.*). Plaintiff filed a claim with the Equal Employment Opportunity Commission and received a Notice of Right to Sue on May 2, 2022. (*Id.* at 6, 8-9). Plaintiff has been unemployed since November 21, 2021. (*Id.* at 7).

Plaintiff generally alleges that he was subject to unfair and discriminatory treatment by Defendant because of medical conditions, such as unstable blood pressure. (*Id.* at 4). Plaintiff further alleges that Defendant subjected him to unequal terms and conditions of his employment and that Defendant failed to accommodate Plaintiff's disability. (*Id.*). Lastly, Plaintiff alleges Defendant engaged in unfair labor practices.[2] (*Id.*).

## III.   ANALYSIS

### A.   Legal Standards

#### 1.   Discrimination Under the ADA

A prima facie case of discrimination under the ADA requires a plaintiff to demonstrate: "(1) that [plaintiff] is disabled within the meaning of the ADA; (2) that [plaintiff] is a qualified individual with a disability; and (3) that [plaintiff] was discriminated against because of [his] disability." *Smith v. Clark County School Dist.*, 727 F.3d 950, 955 (9th Cir. 2013). "Disabled" under the ADA means an individual with "[a] physical or mental impairment that substantially limits one or more major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1). A qualified individual

---

[2] Although Plaintiff's complaint has checked the box on the Civil Cover Sheet for a class action under Federal Rule of Civil Procedure 23, the Court does not reach this issue as Plaintiff has not indicated that he is representing a class of plaintiffs in this action. (ECF No. 1, p. 10).

is an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999) (quoting 42 U.S.C. § 12111(8)) (internal quotation marks omitted).

Title I of the ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 988 (9th Cir. 2007) (quoting 42 U.S.C. § 12112(a)). This prohibition extends to requiring improper medical examinations. *See Equal Employment Opportunity Commission v. BNSF Railway Company*, 902 F.3d 916, 922 (9th Cir. 2018). "Under the ADA, employer medical inquiries are divided into three categories, each with different rules: (1) inquiries conducted before employers make offers of employment; (2) inquiries conducted after an offer of employment has been made but prior but to the commencement of employment duties (employment entrance examinations); and (3) inquiries conducted at any later point." *Id.* (internal quotation marks omitted) (quoting *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1273 (9th Cir. 1998). The relevant ADA rules are quoted below:

> **(d) Medical examinations and inquiries**
>> **(2) Preemployment**
>>> **(A) Prohibited examination or inquiry**
>>> Except as provided in paragraph (3) [below], a covered entity[3] shall not conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability.
>>> **(B) Acceptable inquiry**
>>> A covered entity may make preemployment inquiries into the ability of an applicant to perform job-related functions.

---

[3] Employers are included under the definition of a "covered entity" within the scope and meaning of the ADA. *See* 42 U.S.C. §§ 12111(2), (5). For purposes of this screening, the Court assumes that Defendant is an employer within the meaning of the ADA. *See Smith v. Greyhound Lines, Inc.*, No. 1:18-CV-01354-LJO-BAM, 2018 WL 6593365 (E.D. Cal. Dec. 14, 2018) (plaintiff suing Greyhound Lines, Inc. as an employer).

1

2  **(3) Employment entrance examination**

3  A covered entity may require a medical examination after an offer of employment has been made to a job applicant and prior to the commenced of the employment duties of such

4  applicant, and may condition an offer of employment on the results of such examination, if--

5

6  **(A)** all entering employees are subjected to such an examination regardless of disability;

7  **(B)** information obtained regarding the medical condition of history of the applicant is collected and

8  maintained on separate forms and in separate medical files and is treated as a confidential medical

9  record, except that--

10  **(i)** supervisors and managers may be informed regarding necessary restrictions on

11  the work or duties of the employee and necessary accommodations; . . . .

12  **(C)** the results of such examination are used only in accordance with this subchapter.

13

14  **(4) Examination and inquiry**

   **(A) Prohibited examinations and inquiries**

15  A covered entity shall not require a medical examination and shall not make inquiries of an

16  employee as to whether such employee is an individual with a disability or as to the nature or

17  severity of the disability, unless such examination or inquiry is shown to be job-related and consistent

18  with business necessity.

19  **(B) Acceptable examinations and inquiries**

20  A covered entity may conduct voluntary medical examinations, including voluntary medical histories,

21  which are part of an employee health program available to employees at the work site. A covered

22  entity may make inquiries into the ability of an employee to perform job-related functions.

23  **(C) Requirement**

24  Information obtained under subparagraph (B) [above] regarding the medical condition or history of

25  any employee are subject to the requirements of subparagraphs (B) and (C) of paragraph (3) [above].

26  42 U.S.C. § 12112(d)(2)-(4).

27  "Unlike examinations conducted at any other time, an employment entrance examination

28

need *not* be concerned solely with the individual's ability to perform job-related functions; nor must it be job-related or consistent with business necessity . . . [h]owever, these examinations must still be used in accord with the ADA and cannot violate the ADA's generic disability prohibitions set forth in § 12112(a)." *BNSF Railway Company*, 902 F.3d at 922 (emphasis in original, internal quotation marks and citations omitted) (quoting *Norman-Bloodsaw*, 135 F.3d at 1273).

Additionally, federal regulations provide that individuals may not operate commercial motor vehicles unless they are "medically certified as physically qualified to do so . . ." 49 C.F.R. § 391.41(a)(1)(i); *see also* 49 C.F.R. §§ 391.43, 1630.13-1630.14 (specific provisions regarding medical examinations, largely tracking the language of the ADA statutes). The physical qualification standards require that the prospective driver "[h]as no current clinical diagnosis of high blood pressure likely to interfere with his/her ability to operate a commercial motor vehicle safely[.]" 49 C.F.R. § 391.41(b)(6).

## B.  Analysis of Plaintiff's Complaint

Plaintiff alleges that he has a disability or perceived disability, described in the complaint as a "health issue like unstable blood pressure." (ECF No. 1, p. 4). Plaintiff's complaint appears to allege that Defendant discriminated against him by requiring him to repeat a medical examination a third time, despite Plaintiff's DOT certifications from prior examinations. (*Id.* at 6).

As discussed above, it is not unlawful under the ADA for employers to require medical examinations in certain situations. Here, Plaintiff has alleged that he sought a job as a commercial driver working for Defendant, which does validly require a medical certification. (ECF No. 1, at 6); *see* 49 C.F.R. § 391.41(a)(1)(i) (one may not operate commercial motor vehicles without a medical certification).

Plaintiff appears to allege that Defendant violated the ADA by failing to accept his medical certification. However, the facts alleged, even if true, would not establish a violation of the ADA. Plaintiff alleges that the examination results were rejected because they were not complete, either because they were conducted by the wrong professional or without the correct paperwork. Such administrative requirements alone do not violate the ADA.

1  The facts alleged also do not establish that Plaintiff met the physical requirements of the

2  job. Although Plaintiff alleges that he "was already physically fit", that he "passed all medical

3  tests", and that he "was cleared" by a physician, Plaintiff also alleges that he has a "health issue

4  like unstable blood pressure." (ECF No. 1, at 4, 6-7). As explained above, high blood pressure is a

5  disqualifying condition for commercial motor vehicle operators. 49 C.F.R. § 391.41(b)(6).

6  Accordingly, Plaintiff has not set forth a cognizable claim of discrimination under the

7  ADA.

8  **C.  Failure to Accommodate Disability under the ADA**

9  Under the ADA, "[d]iscrimination includes an employer's not making reasonable

10  accommodations to the known physical or mental limitations of an otherwise qualified …

11  employee, unless [the employer] can demonstrate that the accommodation would impose an

12  undue hardship on the operation of its business." *Garcia v. Salvation Army*, 918 F.3d 997, 1009-

13  1010 (9th Cir. 2019) (quoting *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 396 (2002) (internal

14  quotation marks omitted). A reasonable accommodation under the ADA includes "making

15  existing facilities used by employees readily accessible to and usable by individuals with

16  disabilities; and job restructuring . . . modified work schedules, reassignment to a vacant position

17  . . . appropriate adjustment or modifications of examinations, and other similar accommodations .

18  . . ." 42 U.S.C. § 12111(9)(A)-(B).

19  The only reference to an accommodation in Plaintiff's complaint is where Plaintiff

20  checked the "failure to accommodate my disability" box on Form - *Pro Se* 7. (ECF No. 1, at 4). A

21  conclusion without factual support is insufficient. *Iqbal*, 556 U.S. at 678. Plaintiff sets forth no

22  facts about an accommodation that was requested, denied, or otherwise not accommodated.

23  Accordingly, Plaintiff's complaint fails to state a cognizable claim for failure to

24  accommodate his disability.

25  **D.  Unequal Terms and Conditions of Employment**

26  "The ADA prohibits discrimination against a qualified individual with a disability in

27  regard to terms, conditions and privileges of employment." *Gribben v. United Parcel Service,
Inc.*, 528 F.3d 1166, 1169 (9th Cir. 2008) (citing 42 U.S.C. § 12112(a)).

28  The only reference in Plaintiff's complaint to unequal terms and conditions of

employment is where he checked the box titled "unequal terms and conditions of my employment" on Form – *Pro Se* 7. (ECF No. 1, at 4). However, Plaintiff has not stated sufficient facts to show that he was discriminated against regarding the terms, conditions, and privileges of his employment.

Accordingly, Plaintiff has not set forth a cognizable claim of unequal terms and conditions of his employment.

**E.  Unfair Labor Practices**

Unfair labor practices under 5 U.S.C. § 7116 apply to agencies and labor organizations. 5 U.S.C. § 7116(a)-(b). An "agency" means, with some exceptions, an "Executive agency." 5 U.S.C. § 7103(3). A "labor organization" is defined as "an organization composed in whole or in part of employees, in which employees participate and pay dues, and which has as a purpose the dealing with an agency concerning grievances and conditions of employment . . . ." 5 U.S.C. § 7103(4).

The Civil Cover Sheet accompanying Plaintiff's complaint indicates that the present action is brought pursuant to 5 U.S.C. § 7116.[4] (ECF No. 1, at 10). However, Plaintiff does not allege that section 7116 is applicable to Defendant, *i.e.*, that Defendant is an agency or labor organization. *See, e.g., American Federation of Government Employees, AFL-CIO (AFE), Council 147 v. Federal Labor Relations Authority*, 203 F.3d 1272 (9th Cir. 2000) (considering alleged unfair labor practices by federal agency); *Karahalios v. Defense Language Institute Foreign Language Center Presidio of Monterey*, 534 F.Supp. 1202 (N.D. Cal. 1982) (federal agency and union).

"Section 7116(a) lists unfair labor practices and provides that it shall be an unfair labor practice for an agency . . .  to otherwise fail or refuse to comply with any provision of this chapter." *Montana Air Chapter No. 29, Ass'n of Civilian Technicians, Inc. v. Federal Labor Relations Authority*, 898 F.2d 753, 759 (9th Cir. 1990) (internal quotation marks omitted) (quoting 5 U.S.C. § 7116(a)(8)); *see also* 5 U.S.C. § 7116(b) (listing unfair labor practices for labor organizations). Under § 7116(a), it is an unfair labor practice for an agency, among other

---

[4] The Court has not analyzed the sufficiency of Plaintiff's complaint under another labor practice statute, *e.g.*, the National Labor Relations Act 29 U.S.C. § 151 *et seq.*

things:

    **(1)** to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter;

    **(2)** to encourage or discourage membership in any labor organization by discrimination in connection with hiring, tenure, promotion, or other conditions of employment;

    **(3)** to sponsor, control, or otherwise assist any labor organization, other than to furnish, upon request, customary and routine services and facilities if the services and facilities are also furnished on an impartial basis to other labor organizations having equivalent status;

    **(4)** to discipline or otherwise discriminate against an employee because the employee has filed a complaint, affidavit, or petition, or has given any information or testimony under this chapter; . . . .

5 U.S.C. §§ 7116(a)(1)-(4).

Under § 7116(b), it is an unfair labor practice for a labor organization, among other things:

    **(1)** to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter;

    **(2)** to cause or attempt to cause an agency to discriminate against any employee in the exercise by the employee of any right under this chapter;

    **(3)** to coerce, discipline, fine, or attempt to coerce a member of the labor organization as punishment, reprisal, or for the purpose of hindering or impeding the member's work performance or productivity as an employee or the discharge of the member's duties as an employee;

    **(4)** to discriminate against an employee with regard to the terms or conditions of membership in the labor organization on the basis of race, color, creed, national origin, sex, age, preferential or nonpreferential civil service status, political affiliation, marital status, or handicapping condition; . . . .

5 U.S.C. §§ 7116(b)(1)-(4).

Plaintiff has not alleged facts that would violate these restrictions. Again, an employer requiring a medical examination for an employee seeking to drive commercial motor vehicles is not itself a violation of labor practices.

9

1    Accordingly, Plaintiff fails to state a cognizable claim of unfair labor practices.

2    **IV.    CONCLUSION, RECOMMENDATIONS, AND ORDER**

3    The Court concludes that Plaintiff's complaint fails to state any cognizable claims for the

4    reasons described above. The Court previously provided Plaintiff with the applicable legal

5    standards, explained why Plaintiff's complaint failed to state any claims, and gave Plaintiff leave

6    to file an amended complaint. However, Plaintiff chose to stand on his complaint. Accordingly,

7    the Court finds that granting further leave to amend would be futile.

8    Based on the foregoing, IT IS RECOMMENDED that:

9    1.    This action be dismissed; and

     2.    The Clerk of Court be directed to close the case.

10   These findings and recommendations will be submitted to the United States district judge

11   assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen

12   (14) days after being served with these findings and recommendations, Plaintiff may file written

13   objections with the Court. The document should be captioned "Objections to Magistrate Judge's

14   Findings and Recommendations." Plaintiff is advised that failure to file objections within the

15   specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834,

16   838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

17   Additionally, IT IS ORDERED that the Clerk of Court is directed to assign a district judge

18   to this case.

19
20   IT IS SO ORDERED.

21   Dated:   __January 4, 2023__              /s/ *Erica P. Grosjean*

22                                            UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28

10